**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SALVADOR FLORES GONZALEZ,<br>Petitioner,<br>v.<br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al.,<br>Respondents. | Case No. 1:26-cv-06150-JLT-EPG<br>A-Number: 244-421-891<br>ORDER DENYING PETITIONER'S MOTION TO ENFORCE JUDGEMENT<br>(Doc. 14.) |

On August 17, 2026, this Court entered judgment on Petitioner Salvador Flores Gonzalez's petition for a writ of habeas corpus. (Doc. 12.) The Court ordered Respondents to provide Petitioner with a constitutionally compliant bond hearing at which Respondents were to bear the burden of proof by clear and convincing evidence to show that Petitioner presented a flight risk or danger to the community. (*Id*. at 4.) On August 26, 2026, a bond hearing was held pursuant to this Court's order. (Doc. 14 at 2.) On September 15, 2026, Petitioner filed a motion to enforce the Court's judgment, seeking an order requiring his immediate release. (*Id*. at 13.) For the reasons set forth below, the motion is **DENIED**.

## I. BACKGROUND

This Court has summarized the factual and procedural history behind this action in a previous order and incorporates that by reference here. (*See* Doc. 12.) On August 26, 2026,

Petitioner, along with his attorney. appeared before an immigration judge. (*See* Doc. 16, Digital Audio Recording "DAR I".) The IJ explicitly acknowledged at the outset that the hearing was being held pursuant to a district court order and that the Department of Homeland Security bore the burden of proof to show by clear and convincing evidence that Petitioner poses a danger to the community or poses a flight risk. (DAR I at 2:14 – 2:20.) The IJ noted Petitioner's evidentiary submissions: (1) a Notice to Appear charging Petitioner as removable, (2) this Court's order, (3) Petitioner's supporting documents, (4) Petitioner's sponsor related documents. (*Id*. at 2:27 – 2:41.) DHS initially filed no substantive evidence; when the IJ asked whether that was intentional, counsel for DHS confirmed that she had not filed anything. (*Id*. at 2:41 – 2:52.)

DHS argued first that Petitioner is a potential flight risk because "it was not clear who the sponsor is going to be…I didn't see anything indicating there was any kind of sponsor." (*Id*. at 3:49 – 4:12.) The IJ interjected, directing counsel for DHS to Petitioner's Exhibit 4, which contained detailed information about Petitioner's U.S. citizen sponsor. (*Id*. at 4:12 – 4:47.) DHS' sole remaining argument for flight risk was that Petitioner's relief from removal was speculative. (*Id*. at 5:00 – 5:20.) Petitioner's attorney then presented rebuttal evidence and testimony supporting release, including, *inter alia*, (1) Petitioner's entrance into the United States through a CBP-One Appointment and subsequent grant of humanitarian parole following an assessment of his claims for relief, (2) his timely Form I-589 application for asylum, (3) his two young children, one of whom is a U.S. citizen, (4) his timely filed taxes, (5) his lawful employment in the restaurant industry (6) his role as the sole breadwinner for his family, (7) his sponsor who is a family member and U.S. citizen, and (8) his history of compliance with reporting requirements as evidence by the fact that he was detained during an ICE check-in. (*Id*. at 5:30 – 9:17.)

The IJ then asked counsel for DHS why Petitioner was taken into custody. (*Id*. at 9:47 – 9:50.) DHS's counsel informed the court that Petitioner's Form I-213 confirmed that Petitioner was taken into custody following eight reporting violations. (*Id*. at 10:00 – 11:50.) Once counsel for DHS submitted the Form I-213 and the ENFORCE Alien Removal Module ("EARM") documents for the court's review, Petitioner's counsel objected, noting that the document provided no details on the nature or dates of the violations. (*Id*. at 18:21 – 18:47.) After the IJ

submitted the records into evidence, Petitioner's counsel noted that there were in fact more documents relating to the details of the reporting violations that were submitted by the government in the district court case. (*Id*. at 19:10 – 19:47.) The IJ then called a recess to allow Petitioner's counsel to upload additional documentation.

After the hearing resumed, Petitioner's counsel drew the following conclusions from the newly submitted documentation: (1) the fact that there was no "acknowledgement" of the violations meant that Petitioner was not informed of the violations or given an opportunity to contest, (2) three of the violations appeared to be duplicates, and (3) the last violation happened more than a year before his re-arrest and Petitioner was full compliance for that entire year. (DAR II at 1:46 – 4:22.) In response, DHS argued "the fact that the [Petitioner] has missed even one check-in is an indication he is a flight risk," noting a missed residence verification, a failed home visit, and other missed biometric check-ins. (*Id*. at 7:45 – 8:15.) Counsel for DHS noted that it was the burden of Petitioner to comply with his reporting requirements. (*Id*. at 8:22 – 8:28.) At the conclusion of the bond hearing, the IJ exercised discretion to not hear witness testimony and found that DHS had met its burden to demonstrate that Petitioner is a flight risk by "clear and convincing" evidence. (*Id*. at 8:45 – 9:07.) On August 26, 2026, the IJ issued a written order in which she outlined the evidence and legal bases for denying Petitioner bond. (*See* IJ Order, Doc. 18 at 1-4.)

Petitioner now brings a motion to enforce arguing that, although the hearing occurred, the IJ's ruling denying bond failed to comply with the Court's order because, *inter alia*, the IJ (1) relied on "vague, duplicative, unsupported, and stale" evidence of ATD violations in denying bond on flight risk, (2) improperly shifted the burden to Petitioner by faulting him for not filing the "entire" I-589 and speculating about merits of his asylum application, (3) did not permit witnesses to testify, and (4) failed to meaningfully consider alternative conditions of release. (Doc. 14 at 8-13.) Respondents did not substantively oppose the motion but submitted to the Court the audio of the August 26, 2026, bond hearing (Doc. 16, Digital Audio Recording "DAR I"; Doc. 17, "DAR II") and the evidence submitted at the bond hearing. (Doc. 18.)

///

## II. LEGAL STANDARD

This Court has clear authority to ensure that the Government acts in accordance with its orders granting relief in habeas actions. *See Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) ("[T]he district court ha[s] authority to review compliance with its earlier order conditionally granting habeas relief."). A motion to enforce judgment is the "usual method" for requesting a court interpret its own judgment and compel compliance. *California by & through Becerra v. Dep't of the Interior*, No. 17-cv-5948, 2020 WL 13093994, at *3 (N.D. Cal. July 30, 2020) (citing *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004)).

In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an "abuse of discretion" standard. *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). "[A]buse of discretion" review does not involve "reweigh[ing] evidence" but rather determining whether the IJ "applied the correct legal standard." *Id*. (citation and quotations omitted); *see also Abdelhamid v. Ilchert*, 774 F.2d 1447, 1450 (9th Cir. 1985) (The Court's review for abuses of discretion is limited to those which allege violation by the agency of constitutional, statutory, regulatory or other legal mandates or restrictions) (citation and quotations omitted). In other words, the Court's review is effectively limited to whether the IJ's decision "reflects 'clear legal error' or is unsupported by sufficient evidence." *Hilario Pankim v. Barr*, No. 20-cv-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020). While district courts are "under no obligation to address [Petitioner's] new arguments under the ambit of ensuring compliance with the earlier order," *Leonardo* 646 F.3d 1157 at 1161, the reviewing court must always bear in mind that "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

## III. ANALYSIS

### A. Exhaustion of Administrative Remedies

As a threshold matter, the Court waives the prudential exhaustion requirement in this case for habeas petitions seeking relief pursuant to 28 U.S.C § 2241. *See Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), overruled on other grounds by *Fernandez-Vargas v. Gonzales*,

548 U.S. 30, 126 (2006); *See C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2026 WL 241823 at *5, n.7 (E.D. Cal. Jan. 29, 2026) (waiving exhaustion for enforcement motion challenging the legality of a bond hearing because of irreparable harm from prolonging the petitioner's already lengthy detention); *see also, Loba L.M. v. Andrews*, No. 1:25-CV-00611-JLT-SAB, 2026 WL 710307 (E.D. Cal. Mar. 13, 2026) (excusing exhaustion despite the petitioner not making "an explicit showing" of an excuse in the motion to enforce, because the court had previously found ongoing irreparable harm in its previous order). Such a waiver, however, does not expand the narrow scope of the Court's review: the Court will only determine whether the bond hearing was constitutionally adequate as required by its prior order, and not delve into areas of discretionary decisions made by the IJ. *See, infra*, Legal Standard.

**B. Adequacy of the Bond Hearing**

Petitioner contends that although the hearing occurred, the IJ's ruling denying bond failed to comply with the Court's Order. Having carefully considered and reviewed Petitioner's submissions and the digital audio recording of the August 26, 2026 bond hearing, the Court finds that that Petitioner has not demonstrated that Respondents failed to comply with its prior habeas order or that the IJ abused her discretion in such a way as to violate Petitioner's due process rights.

The Court's prior order required the government to provide Petitioner with an individualized bond hearing before an immigration judge. On August 26, 2026, Petitioner appeared before an immigration judge with his attorney present, presented documentary evidence, including letters of support and documentation related to his extensive community ties and lawful employment, argued for release, and received an oral ruling denying bond. In short, the government provided the hearing as ordered. With respect to the legal framework governing the hearing, the IJ explicitly acknowledged at the outset of the bond hearing and her written order that Respondents had the burden of proof to show by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. (DAR I at 2:14 – 2:20; *See* IJ Order.) The Ninth Circuit has explained that if the immigration court "expressly cited and applied the relevant case law in rendering its decision," the Court accepts that it "applied the correct legal standard," unless

there is an indication that "something is amiss." *Martinez*, 124 F.4th at 785 (cleaned up); *See Mendez-Castro v. Mukasey*, 552 F.3d 975, 980 (9th Cir. 2009).

The Court finds no indication that "something is amiss" in either the IJ's oral or written decision. IJ's have broad discretion to consider a number of factors to determine whether the detainee merits release on bond. *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). The non-exhaustive factors include: fixed address in the United States; length of residence; family ties and their connection to available immigration relief; employment history; record of appearance in court; criminal record "including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses"; history of immigration violations; attempts to flee; and manner of entry to the United States. *Id*. Here, the IJ applied the correct legal standard and considered proper factors in denying bond based on Petitioner's flight risk. Specifically, the IJ considered Petitioner's recent entry into the United States in March 2024, the speculative nature of his relief from removal, and his several violations of the ATD program, including missed check-ins and a failed home visit. (*See* IJ Order.) The IJ also considered Petitioner's U.S. citizen child, his sponsor, his history of lawful employment and of paying taxes, and his ties to the community. (*Id*.) Based on these particularized findings, the IJ did not abuse her discretion in finding Petitioner to be a flight risk. *See Osaretin v. LaRose*, No. 26-CV-1508-JES-AHG, 2026 WL 2033135, at *3 (S.D. Cal. July 14, 2026) (finding the "IJ's decision meets the probative and specific standard under *Guerra*" because "[t]he IJ gave concrete and specific reasons for why he reached his decision.").

In his motion to enforce, Petitioner does not dispute that the ATD violations occurred but attacks the documentation (and lack thereof) surrounding the ATD violations. In doing so, Petitioner appears to make an evidentiary argument, claiming that "EARM [printout] material lacked the indicia needed to establish flight risk by clear and convincing evidence" and that "DHS presented no officer, no BI or ATD witness, no declaration, no notice of violation acknowledged by Petitioner, and no evidence that any alleged lapse was willful rather than a technical or system-based entry." (Doc. 14 at 8-9.) Petitioner cites no authority requiring this heightened standard of evidentiary showing under the clear and convincing standard, especially when there is no

evidence that the I-213 or the EARM printout contain material errors. *Espinoza v. INS*, 45 F.3d 308, 310 (9th Cir. 1995) ("[I]nformation on an authenticated immigration form is presumed to be reliable in the absence of evidence to the contrary presented by the alien."). It is undisputed that at least some violations occurred, as evidenced by documentation submitted during the hearing that clearly shows both the date and nature of each violation. *Cf. Sanchez Henao v. Hernandez*, No. 2:26-CV-00707-LK, 2026 WL 1492714 (W.D. Wash. May 28, 2026) (holding a Form I-213 "which contained information input by an unknown person in an unknown (but deficient) manner, drawn from an unidentified database that culled information from an unknown source—which cited only unspecified "violations" cannot serve as clear and convincing evidence for a finding of flight risk"). Furthermore, it is clear from the IJ's written order that she considered that some of the violations appeared to be technical in nature but found Petitioner to be a flight risk in light of his other violations. (*See* IJ Order)("Though some of the violations appear to be duplicative, [Petitioner's] evidence does reflect several violations of the ATD program, including, inter alia, missed check-ins and a failed home visit.") Thus, the Court finds that it was not an abuse of discretion for the IJ to rely on Petitioner's ATD violations when denying bond based on flight risk.

To the extent that Petitioner argues that the IJ found Petitioner to be a flight risk despite the last ATD violation occurring "more than a year ago" and that "for more than a year Petitioner had kept in contact with DHS and had been fully compliant in all other orders, including never missing any scheduled court dates" (Doc. 14 at 4), the Court lacks the ability to "second-guess the immigration judge's weighing of the evidence." *Calmo v. Sessions*, 2018 WL 2938628, at *4 (holding that where the evidence is undisputed, "differences in interpretation of the facts" remain "well within the province of the immigration judge"); *see also Da Costa-Joao v. McGregor*, No. CV-26-00715-PHX-DWL (MTM), 2026 WL 1030846 (D. Ariz. Apr. 16, 2026) ("The IJ was in the best position to determine whether those violations were innocent and/or the product of technological errors, as Petitioner contends, or whether they were indicative of a risk of flight"). Complaints about the IJ's weighing of specific pieces of evidence and the ultimate the conclusion the IJ reached must be presented through the normal immigration appeal process. *See Valenzuela*

*v. Semaia*, Case No. 5:25-cv-02853-SSS-RAO, 2025 WL 4041920, at *2 (C.D. Cal. Dec. 10, 2025) ("Although Petitioner may disagree with the outcome of the IJ's determination at the bond hearing, this Court does not have jurisdiction to sit as an appellate body over this issue.").

Next, Petitioner argues that the IJ impermissibly shifted the burden of proof to Petitioner by faulting him for not filing the "entire" Form I-589 and speculating about merits of his asylum application. (Doc. 14 at 9.) As stated previously, IJ's are permitted under the *Guerra* factors to consider a non-citizen's connection to available immigration relief. *See also Matter of R-A-V-P*, 27 I&N Dec. 803, 805 (BIA 2020) (noting an IJ "may consider the likelihood that relief from removal will be granted in determining whether [a noncitizen] warrants a bond"). As this Court has previously held, "the "clear and convincing" standard does not relieve Petitioner of the burden of production of evidence and testimony to counter the evidence presented by the government. After all, the government cannot be expected to know, for example, the basis of Petitioner's fear of returning to his home country." *WALTER CARMELO CALERO CRUZ, Petitioner, v. FACILITY ADMINISTRATOR, GOLDEN STATE ANNEX, et al., Respondents.*, No. 1:26-CV-05488-JLT-FJS, 2026 WL 3059483 at *5 (E.D. Cal. Oct. 13, 2026). As such, the Court does not find Petitioner's argument persuasive.

Petitioner also contends that the IJ failed to provide the substantive hearing by not permitting an available witness to testify. (Doc. 14 at 10.) Petitioner contends his sponsor was present and available online during the hearing and was prepared to discuss evidence of Petitioner's fixed address, transportation, supervision, and compliance support. (*Id.*) As a threshold matter, Petitioner did not argue any jurisdictional basis for this Court to resolve alleged procedural defects – such as an IJ's decision to prohibit all witness testimony – that do not clearly fall within the scope of enforcing its prior order. In granting Petitioner's petition for a writ of habeas corpus, this Court directed Respondents "to provide Petitioner with an individualized bond hearing before an immigration judge that complies with the requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011)..." (Doc. 12 at 4.) A broad reading of *Singh* indicates that the Ninth Circuit has determined that a district court's authority to review alleged due process violations beyond those directly related to the burden of proof governing the bond hearing. In

*Singh*, the Ninth Circuit declined to resolve whether the IJ violated Singh's due process rights by permitting the government to cross-examine his wife notwithstanding the parties' prior stipulation that her affidavit would be accepted as true without cross-examination on the basis that Singh failed to demonstrate prejudice. 638 F.3d at 1209-1210. The Court adopts a similar approach here and concludes that it need not determine whether the alleged procedural defects fall within the scope of its prior order because Petitioner cannot demonstrate prejudice. *See Vargas-Hernandez v. Gonzales*, 497 F.3d 919, 926 (9th Cir. 2007) ("In order to prevail on a due process claim that he was denied a full and fair hearing, an alien must also show prejudice—that his rights were violated in a manner so as potentially to affect the outcome of the proceedings") (internal quotation marks and citation omitted).

According to Petitioner's motion to enforce, Petitioner's sponsor's proffered testimony is largely cumulative of evidence presented at the hearing. The IJ properly reviewed and considered evidence of Petitioner's sponsor at the hearing and in her written decision, and even corrected counsel for DHS when she claimed Petitioner did not have a sponsor. (DAR I at 4:12-4:47.) Ultimately, the IJ found that Petitioner's flight risk outweighed the existence of a sponsor. *See Perez v. Wolf*, 445 F. Supp. 3d 275, 291 (N.D. Cal. 2020) (finding that "inherent in the IJ's order is a conclusion that the Petitioner's evidence was not as convincing as the Government's evidence"). Because Petitioner has not demonstrated that his sponsor's proffered testimony was of such magnitude that its exclusion potentially affected the outcome of the proceedings, the Court finds Petitioner has not established prejudice. Without a demonstration of prejudice, Petitioner's argument that his bond hearing did not comport with due process and this Court's prior order necessarily fails.

Finally, the IJ need not consider alternatives to detention after determining that a noncitizen does not warrant bond due to dangerousness or risk of flight. *See Martinez*, 124 F.4th at 786 (citing *Hernandez*, 872 F.3d at 991); *see also Perez v. Wolf*, 445 F. Supp. 3d 275, 291 (N.D. Cal. 2020) ("[A]n IJ need only consider 'alternative conditions to release' once the IJ determines that the detainee is 'neither dangerous nor so great a flight risk as to require detention without bond.' ") (quoting *Hernandez*, 872 F.3d at 991). Because Petitioner was found to be a

flight risk, the IJ did not abuse her discretion when he did not consider alternatives to detention.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, Petitioner's motion to reopen habeas proceedings enforce the Court's earlier order (Doc. 14) is **DENIED**. The case remains **CLOSED**.

IT IS SO ORDERED.

Dated: _October 20, 2026_

Jennifer L. Thurston
UNITED STATES DISTRICT JUDGE